**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3358-24

XIAOCHU HUA,

    Plaintiff-Respondent,

v.

SIJIA ZHU,

    Defendant-Appellant.

---

Argued June 3, 2026 – Decided July 31, 2026

Before Judges Bishop-Thompson and Puglisi.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-0776-15.

Jeffrey M. Pollock (Pollock Law LLC) argued the cause for appellant.

Xiaochu Hua, respondent, argued the cause on respondent's behalf.

PER CURIAM

Defendant Sijia Zhu appeals from a May 23, 2025 Family Part order denying her motion to enforce litigant's rights and granting, in part, plaintiff Xiaochu Hua's cross-motion for the denial of defendant's motion.  We affirm.

I.

The parties were married in 1988 and have two children: Rachel, born in 1998, and Audrey, born in 2000.  The parties' 2015 judgment of divorce incorporated their marital settlement agreement (MSA).  Under the MSA's custody and timesharing provisions, defendant retained "primary physical custody" of the children and plaintiff exercised parenting time "on alternate weekends . . . as well as on agreed[-]upon holidays and agreed upon vacations." The parties agreed to "consult and agree with each other with respect to all major policies of the [c]hildren's education, health, welfare[,] and other matters of similar importance affecting a [c]hild."

The MSA established plaintiff's child support obligation to defendant, which automatically reduced upon Rachel's attendance at college.  Child support was to "terminate, unless otherwise agreed to . . . , upon the emancipation of each child," with emancipation defined as, in pertinent part:  "(i) [g]raduation from high school . . . except if a [c]hild attends college full-time immediately following graduation from high school, [then] he or she shall not be deemed

2

emancipated until graduation with a four year degree"; or "(ii) [f]ull-time employment, except employment while attending college during the summer or school year shall not be deemed an emancipation event."

The parties, both of whom hold post-baccalaureate degrees, "acknowledge[d] that it [wa]s their joint desire that both [c]hildren obtain education beyond high school." In anticipation of both children's attendance at college, the MSA provided:

> Once Audrey leaves to attend college in August 2018, and does not reside with [defendant], [plaintiff]'s obligation to pay child support to [defendant] shall terminate. . . . From that date forward there will be no direct payment of child support from [plaintiff] to [defendant], however[, plaintiff] will continue to have direct obligations on behalf of both children as set forth in th[e MSA]. . . . Thereafter, each party shall support each child when that child resides with him or her on weekends, holidays, and vacations.

To the extent grants, scholarships, and the parties' investment plans were insufficient to cover the cost of college for each child, the remainder of college expenses was to be allocated seventy percent to plaintiff and thirty percent to defendant. The MSA defined college costs as including:

> in connection with the pursuit of a bachelor's or comparable four-year degree, tuition, room, board, books, lab fees, application fees, review courses of the S.A.T. exam, S.A.T. fees and travel to and from home up to four . . . times per year, accessories at college,

including room furnishings, sorority fees, clothing, food and household supplies, and other reasonable and necessary expenses, including but not limited to reasonable commutation costs if applicable, summer courses and studies abroad.

The parties also agreed to divide "mutually agreed upon extraordinary expenses for each [c]hild," with plaintiff paying seventy percent and defendant paying thirty percent. This allocation included costs such as car insurance and expenses, new computers and cell phones, and prom expenses. The parties further agreed to share reasonable expenses for graduate or professional school at the same ratio.

Both children attended Rutgers University, Rachel from August 2016 until May 2020 and Audrey from August 2018 until May 2022. They resided on campus during the academic year until it closed in March 2020 due to the COVID-19 pandemic, after which they lived with defendant. Rachel continued living with defendant during graduate school, which she completed in May 2023, until moving into her own apartment in April 2024. Audrey lived with defendant until campus reopened in October 2020, and then after her graduation until August 2022.

In March 2025, defendant moved to enforce litigant's rights, seeking reimbursement from plaintiff for $73,766 in child support for expenses she

4

claimed to have incurred in the preceding ten years, alleging plaintiff's failure to pay constituted a violation of the MSA. Although not raised in her notice of motion, her reply certification also sought contribution to Roth IRA accounts she established and funded on behalf of each child and reimbursement for a vehicle she purchased for Rachel. Defendant attached spreadsheets containing a "running tally" of expenses each party had paid for the children, along with text messages she asserted were proof of plaintiff's consent to funding the children's Roth IRA accounts. Defendant also submitted a spreadsheet itemizing "home stay" costs she claimed to have incurred during periods the children lived with her after high school, along with her child support calculations based on the guidelines in effect at the time of the MSA's execution.

Plaintiff cross-moved for denial of defendant's motion, arguing many of her claimed expenses were discretionary or voluntary, not mutually agreed upon pursuant to the MSA, or not reimbursable under the child support guidelines. He asserted he paid more than his seventy-percent share of costs required by the MSA, totaling approximately $350,000, and noted defendant did not provide proof of payment for many of her claimed expenses. Plaintiff also submitted proof of payments he made to defendant, along with direct payments for the children's tuition and apartment leases.

5

A-3358-24

Following oral argument, the trial court issued an order and statement of reasons denying defendant's motion and granting plaintiff's cross-motion. In attempting "to reconcile the confusing and disorganized submissions of the parties," the court found defendant's calculation of the child support amount was "murky" because it: did not explain the basis for Audrey's overnight stays; used child support guidelines, which are inapplicable to adult children post-high school; and did not identify the basis for the calculation of interest. The court also noted defendant's submissions included a text message from her to plaintiff advising him they were "all break even" as of September 30, 2021, and according to her own spreadsheet calculations of each party's obligations, defendant owed plaintiff $9,383.53.

The court rejected defendant's demand for child support and various expenses associated with "home stays" for the 1,979 days the children resided with her between September 2016 and March 2024. It noted the MSA "clearly denotes when child support was to terminate and . . . convert to direct support for college expenses." Once Audrey attended college, each party was responsible to support each child when that child resided with them.

While part of the reimbursement sought by defendant included Rachel's "home stays" prior to Audrey's attending college, the court determined "a

6

reasonable interpretation of the MSA" did not impose financial responsibility on plaintiff. Thus, based on the terms of the MSA, the court concluded defendant was not entitled to relief.

On appeal, defendant reprises her arguments she is entitled to reimbursement of costs for the periods of time Rachel and Audrey resided with her while in college and after graduation, prior to moving into an apartment. She characterizes these expenses as college "room and board," which the parties agreed to split seventy/thirty. She concedes the MSA precludes "weekends, holidays, and vacations" and subtracted those time frames from her calculation.

Defendant also contends plaintiff agreed to split the Roth IRA account contributions and the purchase of Rachel's vehicle was a necessary expense. She argues the parties' practice was to summarize expenses rather than provide receipts, and therefore, the court erred by rejecting her documentation.

II.

A trial court's ruling on a motion to enforce litigant's rights is reviewed for an abuse of discretion. Lipsky v. N.J. Ass'n of Health Plans, Inc., 474 N.J. Super. 447, 463 (App. Div. 2023). Our review of the trial court's factual findings is also limited: "[t]he general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare

v. Cesare, 154 N.J. 394, 411-12 (1998). We accord particular deference to the Family Part because of its "special jurisdiction and expertise in family matters." Id. at 413. However, because an MSA is a contract governed by basic contract principles, Quinn v. Quinn, 225 N.J. 34, 45 (2016), we review de novo the trial court's interpretation of the agreement. Serico v. Rothberg, 234 N.J. 168, 178 (2018).

"'[A]bsent a demonstration of "fraud or other compelling circumstances,"' a court should enforce a settlement agreement as it would any other contract." Capparelli v. Lopatin, 459 N.J. Super. 584, 603-04 (App. Div. 2019) (quoting Jennings v. Reed, 381 N.J. Super. 217, 227 (App. Div. 2005)). "[C]ourts should discern and implement the intentions of the parties" but should not "rewrite or revise an agreement when the intent of the parties is clear." Quinn, 225 N.J. at 45. It is not the court's role to "make a better agreement than the parties themselves made." Holtham v. Lucas, 460 N.J. Super. 308, 320 (App. Div. 2019). Thus, unless there is ambiguity in its terms, the court will enforce a contract as written. Quinn, 225 N.J. at 45.

The MSA's terms regarding child support and expense sharing are unambiguous. Plaintiff's child support obligation to defendant terminated upon Audrey's attendance at college, after which each party was to bear the costs of

routine living expenses during the children's periods of residence with that parent. Thus, defendant's demands for child support and routine expenses after Audrey's entry to college are not supported by the MSA. For the time period prior to Audrey's college attendance, the MSA provided for a reduced child support amount, which defendant does not dispute she was paid. Nothing in the MSA obligates plaintiff to reimburse defendant for additional child support, which she recasts as "room and board," for the periods of time the children lived with her.

Moreover, the MSA requires extraordinary expenses be "mutually agreed upon." After examining defendant's documentation, the court found her submissions did not establish plaintiff agreed to contribute to the Roth IRAs or the purchase of a vehicle. Having reviewed the record, we discern no basis on which to disturb the court's determination.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

9

A-3358-24